UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 07-10216-RGS

UNITED STATES OF AMERICA

v.

JOSEPH M. CATANESE

MEMORANDUM AND ORDER ON DEFENDANT'S
MOTION TO WITHDRAW HIS PLEA OF GUILTY

October 5, 2009

STEARNS, D.J.

After a careful review of the record, and more particularly, the transcript of the hearing at which defendant Joseph Catanese pled guilty, I will <u>DENY</u> the motion to withdraw the guilty plea.  Catanese sought to withdraw his plea at the commencement of his sentencing hearing on September 4, 2009.[1]  The court had previously accepted the guilty plea at the conclusion of a Rule 11 hearing on November 26, 2008.  Under the terms of a non-binding (Rule 11(c)(1)(B)) plea agreement, Catanese pled to a two-count superseding information charging two related conspiracies, the first to collect a debt by extortionate means, the second to obstruct justice.  The parties agreed that Catanese's Guidelines Sentencing Range (GSR) under the superseding information was twenty-four to thirty months.  In exchange for the plea, the government agreed to dismiss the underlying indictment and recommend a sentence at the low end of the GSR.  The government further agreed that in exchange for Catanese's cooperation against his co-

---

[1]The court postponed the imposition of sentence to consider Catanese's motion to withdraw his plea.

conspirators, it would make a motion under U.S.S.G. § 5K1.1, with the prospect (at the court's discretion) of an even lower sentence in recognition of his "substantial assistance."[2]

In its pertinent details, the plea colloquy established that Catanese was (at the time of the plea) fifty-three years old and the recipient of a bachelor's degree in criminal justice. Catanese had served as a police officer for twenty-six years, starting as a patrolman in Falmouth, Massachusetts, before joining the Metropolitan District Commission Police (which later merged with the Massachusetts State Police).  At the time of his arrest, Catanese was a State Police detective assigned to the Major Crimes Unit where he worked as an investigator for the Suffolk District Attorney and for the Drug Enforcement Administration Task Force, among other assignments.

Over the course of the colloquy, Catanese acknowledged his understanding of the significance of a waiver of indictment[3] and the surrender of the right to a jury trial and other constitutional rights, as well as his understanding of the elements of the offenses to which he was pleading guilty.  Of more immediate importance, Catanese acknowledged the truth of the government's outline of the incriminating facts, including being present when an accomplice told the target of the extortion that he would cut him "from ear to ear" if he did not pay a debt owed to Mark Lemieux, a former state trooper and colleague of Catanese

---

[2]Given the sensitivity of the agreement for cooperation, it was not discussed in open court.  Rather at the plea colloquy, the court was given a copy of the agreement under seal. The court confirmed with Catanese that he had read and signed the agreement and understood the import of the paragraph making it clear that in a Guidelines context, a departure under § 5K1.1 required the government to take "certain [first] steps."

[3]Here, this was perhaps less significant as Catanese had already been indicted.  He also stated that he had previously testified (as a prosecution witness) before the state grand jury.

who had recruited Catanese to collect the debt.[4]  He also admitted to having passed on to Lemieux information he had learned from a State Police acquaintance that Lemieux's girlfriend and co-defendant Tara Drummey was being investigated for drug offenses.

The applicable rules of law governing a request to withdraw a plea of guilty can be summarized as follows.

> Although a motion to withdraw a guilty plea before sentencing is determined under a less stringent standard than a motion made after sentencing, a defendant does not have an automatic right to withdraw his plea even at that comparatively early stage.  Rather, such a motion can be granted before sentencing only upon an affirmative showing of a "fair and just reason."  Fed. R. Crim. P. 32(d) [now Rule 11(d)(2)(B)].  The devoir of persuasion as to the existence of such a reason rests with the defendant.  To gauge whether the asserted ground for withdrawal meets the Rule [11](d) standard, a court must look at the overall situation, most prominently (1) the plausibility of the reasons prompting the requested change of plea; (2) the timing of the defendant's motion; (3) the existence or nonexistence of an assertion of innocence; and (4) whether, when viewed in light of emergent circumstances, the defendant's plea appropriately may be characterized as involuntary, in derogation of the requirements imposed by Fed. R. Crim. P. 11, or otherwise legally suspect.  And there is a final barrier that must be surmounted:  even if a defendant appears at first blush to meet the strictures of this four-part test, the *nisi prius* court still must evaluate the proposed plea withdrawal in relation to any demonstrable prejudice that will accrue to the government if the defendant is permitted to alter his stance.

United States v. Parrilla-Tirado, 22 F.3d 368, 371 (1st Cir. 1994) (citations omitted).

The law in this area has been well-tested in a wide range of factual scenarios relevant in one degree or another to Catanese's case.  See United States v. Gonzalez-Vazquez, 34 F.3d 19, 22 (1st Cir. 1994) (a defendant's misapprehension of the

---

[4]The government did not allege that Catanese knew that the debt stemmed from a series of drug transactions.  Catanese (through his attorney) went to pains to make it clear that while he participated in the extortionate scheme to collect the debt, he did not know that the money was owed for drugs.  He also denied personally uttering the threat to "cut" the victim, but acknowledged recruiting the accomplice who did.

range of sentence likely to be imposed is not a fair and just reason for withdrawing a guilty plea); United States v. De Alba Pagan, 33 F.3d 125, 127 (1st Cir. 1994) ("In short, a defendant's lament that he misjudged the consequences of his guilty plea, without more, is not a fair and just reason for setting the plea aside."); Parrilla-Tirado, 22 F.3d at 371 ("[P]lausibility must rest on more than the defendant's second thoughts about some fact or point of law, or about the wisdom of his earlier decision.").  "While an immediate change of heart may well lend considerable force to a plea withdrawal request, a long interval between the plea and the request often weakens any claim that the plea was entered in confusion or under false pretenses."  United States v. Doyle, 981 F.2d 591, 595 (1st Cir. 1992) (rejecting a plea withdrawal request made seven months after the plea).  See also United States v. Isom, 85 F.3d 831, 838-839 (1st Cir. 1996) (two months, "the more a request is delayed – even if made before sentence is imposed – the more we will regard it with disfavor."); Parrilla-Tirado, 22 F.3d at 373 (six months, "[t]he rule of thumb is that the longer a defendant waits before moving to withdraw his plea, the more potency his motion must have in order to gain favorable consideration."); United States v. Crosby, 714 F.2d 185, 192 (1st Cir. 1983) (eight weeks); United States v. Keefe, 621 F.2d 17, 18 (1st Cir. 1980) (three weeks).  See also United States v. Marrero-Rivera, 124 F.3d 342, 350 (1st Cir. 1997) (anxieties and time pressures); United States v. Kobrosky, 711 F.2d 449, 455 (1st Cir. 1983) ("mere protestation of legal innocence").

As is painfully obvious, whether in a legal or a factual context, Catanese's motion fails all four of the critical tests.  His asserted ground for withdrawal – that he was denied discovery that would reveal his considerable accomplishments as a government agent and informant – is ludicrous.  What assistance Catanese rendered to the government is known

4

to him and, as he was warned in the plea agreement, the decision as to its substantiality

was a matter for the government, and not the court (or Catanese) to determine.  The timing

of the motion – on the cusp of sentencing – could not be worse for Catanese.  His assertion

of innocence is at best lame, stemming as it does from an incredible claim of discovery

abuse and, as the government points out, only half an insistence, as Catanese does not

deny his responsibility for obstructing justice.  Finally, as the transcript confirms, there were

no lapses in the court's Rule 11 inquiry and nothing that would suggest that Catanese – a

police officer with twenty-six years of experience in the nuances of the criminal justice

system (and a bachelor's degree in criminal justice to boot) – pled guilty involuntarily or

without full knowledge of the consequences.[5]  In sum, there is simply no plausible ground

that would justify the allowance of Catanese's motion.

ORDER

For the foregoing reasons, the motion to withdraw the plea of guilty is <u>DENIED</u>.  The

Clerk will reschedule sentencing at the earliest available opportunity.[6]

SO ORDERED.

/s/ Richard G. Stearns

_____

UNITED STATES DISTRICT JUDGE

---

[5]As Catanese fails every prong of the four-part <u>Parilla-Tirado</u> test, there is no reason for the court to consider the "final barrier" – the government's assertion of prejudice – although there is no reason to doubt their force.

[6]The court recognizes that the government is no longer bound by the plea agreement with Catanese.  It would be the better practice if the government were, prior to the rescheduled sentencing, inform Catanese's counsel of the recommendation it intends to advance at the hearing.

5